UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN C. MACFARLANE and )
AMY MACFARLANE, )
 )
       Plaintiffs, )
    v. )      CIVIL ACTION
 )      NO. 14-13272-JGD
THE TOWN OF EAST )
BRIDGEWATER, et al., )
 )
      Defendants. )

**MEMORANDUM OF DECISION AND ORDER ON
EAST BRIDGEWATER DEFENDANTS' MOTION TO DISMISS**

June 23, 2015

DEIN, U.S.M.J.

# I.  INTRODUCTION

This case arises out of an incident that occurred on October 20, 2013, when

John R. Grillo, a detective in the East Bridgewater police department, went to the

home of the plaintiffs, John C. MacFarlane and Amy MacFarlane, in order to

investigate a complaint accusing the MacFarlanes of violating a town by-law

pertaining to fencing requirements for residential swimming pools.  The complaint

had been made by Jeanne L. Bennett, a neighbor of the plaintiffs who was

employed as the administrative assistant to the East Bridgewater chief of police.

According to the plaintiffs, Mrs. Bennett and her husband, Leslie J. Bennett, have

been engaged in a relentless campaign of harassment and intimidation against them for many years, and have enlisted assistance from the police and other town employees in carrying out their efforts to disturb, threaten and otherwise antagonize the MacFarlanes. They contend that Detective Grillo's investigation on October 20, 2013 had no legitimate basis, and was merely a pretext for furthering the Bennetts' personal campaign of harassment against them. By their Verified Complaint, the MacFarlanes have asserted claims against the Bennetts and Detective Grillo, as well as against the Town of East Bridgewater ("Town" or "East Bridgewater"), its Chief of Police, John Cowan, police sergeant Scott Allen, and the Town's Building Commissioner, Edward Gardner, for violations of their constitutional and state law rights.

The matter is presently before the court on the "Motion to Dismiss on Behalf of Defendants the Town of East Bridgewater, John Cowan, John R. Grillo, Scott Allen, and Edward Gardner" (Docket No. 8) (collectively, the "East Bridgewater defendants"). By their motion, the East Bridgewater defendants are seeking dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), with respect to all of the MacFarlanes' claims against them, including their claims for violations of their civil rights under 42 U.S.C. § 1983 ("Section 1983") (Counts I and III); conspiracy to violate their civil rights pursuant to 42 U.S.C. § 1985 (Count II); violations of their rights under the Massachusetts Civil Rights Act ("MCRA") (Counts IV and VI); common law

conspiracy to violate their civil rights under the MCRA (Count V); and invasion of their right to privacy under Mass. Gen. Laws ch. 214, §1B (Count VII). Although the plaintiffs have opposed the motion,[1] they have requested an opportunity to amend their Verified Complaint in the event this court rules in favor of the defendants.

For all the reasons described below, this court finds that the MacFarlanes have failed to state a claim for relief against the East Bridgewater defendants under any legal theory, and that all of the Counts against those parties must therefore be dismissed. Accordingly, the East Bridgewater defendants' motion to dismiss is ALLOWED. In accordance with this court's May 28, 2015 Scheduling Order, the plaintiffs may file any motion to amend their Complaint by **July 17, 2015**. However, the parties are hereby notified that in the absence of any cognizable federal claim, the matter will be remanded to state court.

## II. STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). "Ordinarily, a court may not consider any documents that

---

[1] It appears that the plaintiffs are not opposing the dismissal of Counts II, VI and VII to the extent those claims have been brought against the East Bridgewater defendants. (See Pl. Opp. Mem. (Docket No. 11) at 1). In addition, as described below, this court finds that those claims must be dismissed on the merits.

are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).[2] Applying this standard to the instant case, the facts relevant to the East Bridgewater defendants' motion to dismiss are as follows.

## The Dispute Between the MacFarlanes and the Bennetts

As described above, this case was triggered by an incident that occurred against the backdrop of a long running dispute between the MacFarlanes and the Bennetts, who live across the street from each other in East Bridgewater, Massachusetts. (See Compl. ¶¶ 9-10, 43, 54). The MacFarlanes claim that over the course of many years, the Bennetts have engaged in a relentless effort to harass, intimidate, disturb and humiliate them, as well as members of their family and guests at their home. (Id. ¶¶ 43, 54). For example, but without limitation, the plaintiffs allege that when they open their front door or spend time in their front

---

[2] In accordance with the relevant standard, this court has considered the documents that have been referred to in and attached to the MacFarlanes' Verified Complaint ("Compl. Ex. __") (Docket No. 1-1).

yard, the Bennetts come outside and set up chairs directly facing the plaintiffs' home. (Id. ¶ 54(a)). The Bennetts then proceed to sit and stare at the plaintiffs, or members of the plaintiffs' family, for purposes of disturbing, annoying and harassing them. (Id.). In addition, according to the MacFarlanes, the Bennetts often yell vulgarities at them, aim spotlights and recording devices directly at their home, place items such as garbage, dog feces, gum and dead animals on or next to the plaintiffs' driveway, make obscene gestures to the MacFarlanes' children, and blow snow, grass clippings and debris onto the plaintiffs' property. (Id. ¶¶ 54(c), 54(d)-(i), 54(l)). Moreover, but again without limitation, the MacFarlanes complain that the Bennetts have followed them to work, built a snowman designed to look like Mr. MacFarlane with red liquid dribbled down its head, and placed a figure of a monkey with a rope around its neck in their front yard, which was meant to symbolize Mr. MacFarlane. (Id. ¶¶ 57-58, 59(c), (d)). They claim that these and other, similar actions have interfered with their privacy and caused them to suffer emotional distress. (See id. ¶¶ 43, 52).

Throughout the time period when these events allegedly were taking place, Mrs. Bennett was employed as an Administrative Specialist or a Parking/Hearing Clerk for the East Bridgewater Police Department, where she reported directly to the Chief of Police, defendant John Cowen. (Id. ¶ 9). The plaintiffs allege that the Bennetts exploited Mrs. Bennett's position in the Police Department in order to

carry out their campaign of harassment and intimidation against them.  (Id. ¶ 44).  For example, the MacFarlanes claim that the Bennetts lodged numerous baseless complaints against them with the East Bridgewater police, and that the police chose to pursue and investigate those complaints aggressively, only to find that they were lacking in merit.  (Id.¶ 46).  They also claim that on several occasions, police officers followed Mr. MacFarlane to work for no reason other than to intimidate, harass and humiliate him.[3]  (Id. ¶ 49).  In addition, the plaintiffs allege that before he assumed his present position as head of the East Bridgewater Police Department, Chief Cowan attempted to harass and intimidate Mr. MacFarlane by parking his vehicle near the plaintiffs' home and watching Mr. MacFarlane pack up his truck for work in the mornings.  (Id.).  According to the plaintiffs, Chief Cowan later told them that he was observing Mr. MacFarlane as a favor to Mrs. Bennett.[4]  (Id.).

---

[3]  The plaintiffs have not identified the officers who allegedly followed Mr. MacFarlane to work, and have not attributed that conduct to any of the named defendants.

[4]  As described in their opposition to the motion to dismiss, the plaintiffs' claims against the East Bridgewater defendants are based on the defendants' investigation of the MacFarlanes' alleged violation of the Town's pool fencing by-law, and not on Chief Cowan's alleged observation of Mr. MacFarlane. (See Pl. Opp. Mem. at 2-4, 6, 8).  Thus, the facts relating to Chief Cowan's actions in observing Mr. MacFarlane merely provide background information concerning the nature and status of the parties' relationship during the period leading up to the incidents giving rise to the plaintiffs' claims.

## Complaint Regarding the Plaintiffs' Fence

The incident that ultimately led the plaintiffs to file the instant lawsuit was triggered by a complaint that Mrs. Bennett made to the police on September 6, 2013, at the time she was working as Chief Cowan's administrative assistant. (Id. ¶ 37). Specifically, Mrs. Bennett reported that the MacFarlanes had failed to install a fence around their pool that met the height requirements set forth in the Town's by-laws. (Id. ¶ 37; Compl. Ex. K). She further informed the police that she had notified the Town's Building Commissioner, defendant Edward Gardner, about the alleged by-law violation, but had not received a response from him. (Compl. Ex. K). Defendant Scott Allen, a Sergeant in the Police Department, instructed Detective Grillo to coordinate with the Building Commissioner in order to address Mrs. Bennett's complaint, as well as "any other similar situations in town that are identifiable." (Id.). He also instructed a second officer to compile a list of pools that appeared to violate the Town's by-law, so that Detective Grillo and Building Commissioner Gardner could devise an immediate course of action. (Id.). Accordingly, Detective Grillo was assigned responsibility for investigating and enforcing the by-law, which required that all outdoor residential swimming pools capable of holding water over 24 inches deep be surrounded by a fence measuring at least five feet in height (the "pool fencing by-law"). (See id. ¶¶ 18, 29).

The plaintiffs contend that the police had no authority to investigate or enforce the local by-laws, and that Mrs. Bennett's complaint should have been handled solely by the Town's Building Commissioner. (See id. ¶¶ 29-30, 40-41). Specifically, the plaintiffs rely on Mass. Gen. Laws ch. 40A, § 7, which provides in relevant part that "[t]he inspector of buildings, building commissioner or local inspector . . . shall be charged with the enforcement of the zoning ordinance or by-law[.]" (Id. ¶ 30). It further provides that

> [i]f the officer ... charged with enforcement of zoning ordinances or by-laws is requested in writing to enforce such ordinances or by-laws against any person allegedly in violation of the same and such officer or board declines to act, he shall notify, in writing, the party requesting such enforcement of any action or refusal to act, and the reasons therefor, within fourteen days of receipt of such request.

Mass. Gen. Laws ch. 40A, § 7. Based on this statute, the MacFarlanes claim that the police should have instructed Mrs. Bennett to submit her complaint to Building Commissioner Gardner "so that a record of the request could be made so that the Building Commissioner could respond in writing, and so that the Plaintiffs' rights of appeal and other legal remedies [under the statute] could be preserved." (Compl. ¶ 40). They further allege that the police ignored the requirements of Mass. Gen. Laws ch. 40A, § 7 and, along with the Building Commissioner, "embarked on a campaign to intimidate, harass, threaten, badger, embarrass and humiliate the Plaintiffs[.]" (Id. ¶ 41).

## Investigation of Plaintiffs' Alleged By-Law Violation

On September 23, 2013, Building Commissioner Gardner sent the MacFarlanes a letter regarding their alleged failure to comply with the Town's pool fencing by-law. (Compl. Ex. B). Specifically, in his letter, Gardner informed the plaintiffs in substantive part as follows:

> Recently, the Planning/Building Department was informed, as a result of a town-wide review, that the pool enclosure located at [your property] currently does not appear to comply with the East Bridgewater Town By-Law regarding pool fences. The By-Law requires that all outdoor residential swimming pools capable of containing water over 24 inches deep be surrounded by a fence not less than five (5) feet in height at all times (copy of By-Law enclosed).

(Id.). Building Commissioner Gardner also instructed the MacFarlanes to "take the appropriate action to comply with this By-Law forthwith" and to contact him or Detective Grillo in the event they had any questions. (Id.). Although the record indicates that the plaintiffs owned a temporary swimming pool, they claim that it was not present at their property on September 23, 2013, and that there was no violation of the by-law at the time Gardner sent the letter. (See Compl. ¶¶ 27, 34-35; Compl. Ex. J at 2).

Notwithstanding Gardner's statement to the contrary, the plaintiffs contend that there had been no legitimate town-wide review of residents' compliance with the pool fencing by-law. (Id. ¶ 35). Thus, although the record establishes that Gardner sent enforcement letters to 12 homeowners in addition to the

MacFarlanes, the plaintiffs insist that "the so-called 'town-wide' policy was orchestrated to avoid the appearance of bias/favoritism and was a mere pretext to unlawful actions and conduct that were directed at the Plaintiffs."  (See id. ¶¶ 26, 28, 32-33, 35).

After Gardner issued the notices regarding the alleged by-law violations, Detective Grillo conducted follow up visits to each of the targeted properties.  (See Compl. Ex. J).  On Sunday October 20, 2013, at approximately 10:45 a.m., he visited the MacFarlane's home.  (Id.¶ 14).  The MacFarlanes claim that Detective Grillo lacked probable cause, a warrant or other legal authority to conduct an investigation of their alleged by-law violation, and that his actions deprived them of their rights under the Constitution and laws of Massachusetts.  (See id. ¶ 1).

The plaintiffs allege that when Detective Grillo arrived at their home, he parked his car on the street, walked up their front walkway and onto their front porch, and knocked on their front door.  (See id. ¶ 14; Compl. Ex. A).  They further allege that Mr. MacFarlane answered the door to find Detective Grillo standing on his porch.  (See id.).  According to the MacFarlanes, the defendant was wearing a firearm, which was clearly visible on his hip.  (Compl. ¶ 14).  He identified himself as an officer with the East Bridgewater Police Department, and explained that he was following up on the Building Commissioner's letter regarding the MacFarlanes' swimming pool.  (Id. ¶¶ 14-15).

Allegedly, Mr. MacFarlane informed the defendant that there was no pool in his yard, but Detective Grillo proceeded to interrogate the plaintiff regarding his potential violation of the Town's pool fencing by-law. (See id. ¶¶ 15-16). In particular, Detective Grillo allegedly asked Mr. MacFarlane whether he had a portable pool, and whether the pool could hold more than 24 inches of water. (Id. ¶ 15). He also described the nature of the complaint that had been made against the MacFarlanes and inquired as to whether the plaintiffs' fence met the by-law's five foot height requirement. (Id. ¶ 16). When Mr. MacFarlane admitted to some uncertainty regarding the exact height of the fence, Detective Grillo allegedly walked toward the side of the house and approached the fence. (Id.). He then told Mr. MacFarlane, without measuring the fence, that one section was only four feet high, and that the height of the entire fencing structure needed to be five feet. (See id.).

The plaintiffs claim that despite Mr. MacFarlanes' representation that no pool was present at the property, Detective Grillo proceeded to carry on with his questioning. (Id. ¶ 17). Thus, according to Mr. MacFarlane, Detective Grillo asked whether the plaintiff had received a letter from the Building Commissioner regarding an alleged violation of the pool fencing by-law. (Id.). Allegedly, Mr. MacFarlane confirmed that he had received such a letter, dated September 23, 2013, and that there had been no pool on the property at that time either. (Id.).

Nevertheless, Detective Grillo continued to pose questions to Mr. MacFarlane. (Id.). As described below, the plaintiffs claim that Detective Grillo lacked authority to investigate this matter pursuant to Mass. Gen. Laws ch. 40A, § 7, and that his "interrogation" of Mr. MacFarlane violated a number of their constitutional rights.

Additional factual details relevant to this court's analysis are described below where appropriate.

## III. ANALYSIS

### A. Motion to Dismiss Standard of Review

The East Bridgewater defendants, including Chief Cowan, Detective Grillo, Sergeant Allen and Building Commissioner Gardner, have moved to dismiss the MacFarlanes' claims against them pursuant to Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. Cooperman, 171 F.3d at 46. Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane."  Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted).  This second step requires the reviewing court to "draw on its judicial experience and common sense."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Morales-Cruz, 676 F.3d at 224 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).  This court finds that under the applicable standard, the East Bridgewater defendants' motion to dismiss must be allowed.

### B.    Counts I and IV: Claims Against the Individual Police Officers for Civil Rights Violations Under Section 1983 and the MCRA

In Counts I and IV of their Verified Complaint, the MacFarlanes have asserted civil rights claims, pursuant to Section 1983 and the MCRA, against Chief Cowan, Detective Grillo and Sergeant Allen in their individual capacities.  By

those claims, the plaintiffs contend that the officers deprived them of their constitutional rights to equal protection, freedom from unreasonable searches and substantive due process.[5] The defendants argue that they are immune from suit on these claims under the doctrine of qualified immunity. (Def. Mem. (Docket No. 18) at 6-9, 15-16). They also argue that the plaintiffs have failed to allege sufficient facts to make out a viable claim under either Section 1983 or the MCRA. (Id. at 9-10, 16-17).

For the reasons detailed below, this court finds that the defendant police officers are entitled to qualified immunity. Even under the most liberal reading of the Complaint, the plaintiffs' allegations focus almost exclusively on Detective Grillo's conduct on October 20, 2013, when he visited the MacFarlanes' home and questioned Mr. MacFarlane about the alleged pool fencing violation. Although the plaintiffs allege generally that each of the officers disregarded his "obligations regarding zoning matters," and "embarked on a campaign to intimidate, harass, threaten, badger, embarrass and humiliate the Plaintiffs" in a manner that violated their constitutional rights (see Compl. ¶ 41), they have not alleged any facts

---

[5] In their complaint, the plaintiffs allege that the defendant police officers deprived them "of numerous … constitutional rights, including, but not limited to, freedom from unreasonable search under the Fourth Amendment, freedom from false accusations, due process and equal protection under the Fifth and Fourteenth Amendments, privileges and immunities under Article IV and the Fourteenth Amendment and freedom from intimidation and humiliation." (Compl. ¶ 67). However, in their opposition to the motion to dismiss, the plaintiffs have clarified that they are seeking to hold those defendants liable for violations of their rights to equal protection, freedom from unreasonable searches and substantive due process. (Pl. Opp. Mem. (Docket No. 11) at 9-16, 21).

showing that Chief Cowan participated in or condoned Detective Grillo's investigation of the alleged by-law violation or was even aware that Mrs. Bennett had made a complaint against the MacFarlanes.  Nor have they alleged that Seargent Allen did anything other than advise Detective Grillo to coordinate with the Building Commissioner in order to address Mrs. Bennett's complaint and other potential violations of the Town's pool fencing by-law.  (See Compl. Ex. K).  As described below, neither that conduct nor Detective Grillo's more extensive actions are sufficient to state a claim for violation of a constitutional right, or to deprive the officers of protection under the doctrine of qualified immunity.

## Qualified Immunity – In General

"Under the doctrine of qualified immunity, police officers are protected 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Mlodzinski v. Lewis, 648 F.3d 24, 32 (1st Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)) (additional citation omitted).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is a mistake

of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231, 129 S. Ct. at 815 (quotations and citations omitted).

The First Circuit employs the following analysis to evaluate whether a particular defendant is entitled to qualified immunity:

> Following *Pearson* we employ a two-prong analysis in determining whether a defendant is entitled to qualified immunity. We ask (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. The second prong, in turn, has two parts. We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right. The salient question is whether the state of the law at the time would have given a reasonably competent officer clear notice that what he was doing was unconstitutional.

Mlodzinski, 648 F.3d at 32-33 (internal citations and quotations omitted).

"[T]he Supreme Judicial Court of Massachusetts has held that MCRA claims are subject to the same standard of immunity for police officers that is used for claims asserted under § 1983." Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010). Therefore, the qualified immunity analysis applies equally to the plaintiffs' claims under Section 1983 and their claims under the MCRA. See id. ("Because we have already determined that [the defendant] is not protected by qualified immunity with respect to the § 1983 excessive force claim, we likewise conclude that he is not entitled to qualified immunity against the MCRA claim alleging

excessive force"). In the instant case, the defendants contend that they are protected by the doctrine of qualified immunity because the plaintiffs have failed to allege sufficient facts to make out a constitutional violation, and because no officer in the defendants' position would have understood that knocking on someone's door and discussing the height of a visible fence constituted a violation of the MacFarlanes' constitutional rights. (Def. Mem. at 8-9). This court finds that the defendants are entitled to relief on this basis.

## Equal Protection

In support of their claims against the police defendants under Section 1983 and the MCRA, the MacFarlanes contend that the officers violated their Fourteenth Amendment right to equal protection under a "class of one" theory by singling them out for enforcement of the Town's pool fencing by-law, and by depriving them of the benefits and protections of Mass. Gen. Laws ch. 40A, § 7, "which vests jurisdiction to investigate and determine zoning violations . . . in the local building commissioner." (Pl. Opp. Mem. (Docket No. 11) at 9-13). This court finds that the plaintiffs have failed to allege sufficient facts to support such a claim.

To the extent the MacFarlanes are claiming that the police violated their constitutional rights by failing to abide by state law, their argument lacks merit. "It is established beyond peradventure that a "state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to

erect a section 1983 claim." <u>Martinez v. Colon</u>, 54 F.3d 980, 989 (1st Cir. 1995).

While in some instances "constitutional significance may attach to certain interests

created by state law, not every transgression of state law does double duty as a

constitutional violation." <u>Id.</u> (internal citation omitted).  As the First Circuit has

explained,

> [t]he Constitution is a charter of carefully enumerated rights and
> responsibilities, defining the relationship between the people and a
> government of limited powers.  Its scope and application are
> necessarily determined by its own terms.  Though grand in its design
> and eloquent in its phrasing, the Constitution is not an empty ledger
> awaiting the entry of an aggrieved litigant's recitation of alleged state
> law violations – no matter how egregious those violations may appear
> within the local legal framework.

<u>Id.</u>  Thus, the critical issue for purposes of the MacFarlanes' constitutional claims

is not whether the police defendants lacked authority to investigate and enforce

local zoning by-laws under Massachusetts law, but whether their alleged conduct

violated the MacFarlanes' constitutional rights.

In order to state a "class of one" equal protection claim, a plaintiff must

allege "that she has been intentionally treated differently from others similarly

situated and that there is no rational basis for the difference in treatment." <u>Cordi-</u>

<u>Allen v. Conlon</u>, 494 F.3d 245, 250 (1st Cir. 2007) (quoting <u>Vill. Of Willowbrook</u>

<u>v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).  Here,

however, the MacFarlanes have not alleged facts showing that they were treated

differently from other, similarly situated residents of East Bridgewater.  Although

they suggest that the police officers were targeting them in order to promote the Bennetts' campaign of harassment against them, the plaintiffs' own allegations establish that they were treated no differently than other residential pool owners. Thus, the MacFarlanes allege that the police compiled a list of all pools that appeared to violate the pool fencing by-law, and that Building Commissioner Gardner sent enforcement letters to 12 homeowners in addition to the plaintiffs. (Compl. Ex. K; Compl. ¶¶ 26, 28). They also allege that Detective Grillo made follow up visits to each of the targeted homeowners, including those with permanent pools and others, like the plaintiffs, who used a temporary pool at their property.[6] (See Compl. Ex. J). "By definition, a class of one is not a class of many." Cordi-Allen, 494 F.3d at 254. Because the police defendants' alleged treatment of the plaintiffs was consistent with their treatment of other, similarly situated residents of East Bridgewater, the MacFarlanes have failed to state a claim for violation of their Fourteenth Amendment right to equal protection.

---

[6] To the extent the plaintiffs claim that they were treated differently than other residents of the Town because their pool was not set up and the Building Commissioner was not able to observe a pool in their yard before notifying them of the alleged by-law violation, their claim is unpersuasive. (See Compl. ¶ 27). The Complaint demonstrates that the MacFarlanes used a temporary pool, and that other owners of such pools were subjected to the same treatment as the plaintiffs. (See Compl. Ex. J). It also indicates that at the time he performed his inspections of the targeted properties, several owners of temporary pools aside from the MacFarlanes had taken their pools down as well. (See id. at 2).

**Freedom From Unlawful Searches**

The plaintiffs also claim that the individual officers engaged in an unlawful search of their property. (Pl. Opp. Mem. at 13-14). In particular, the plaintiffs take issue with Detective Grillo's visit to their home on October 20, 2013, and they argue that his conduct in questioning Mr. MacFarlane on the front porch, and in stepping off the porch to approach the MacFarlanes' fence, violated their rights under the Fourth Amendment. (Id. at 13-14). "The Fourth Amendment provides in relevant part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" Florida v. Jardines, --- U.S. ---, 133 S. Ct. 1409, 1414, 185 L. Ed.2d 495 (2013). However, this court finds that Detective Grillo's alleged conduct did not constitute an unreasonable search within the meaning of the Fourth Amendment, and that this claim too must be dismissed.

"The Fourth Amendment 'indicates with some precision the places and things encompassed by its protections': persons, houses, papers, and effects." Id. (quoting Oliver v. United States, 466 U.S. 170, 176, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984)). In addition, the Supreme Court considers "the area 'immediately surrounding and associated with the home' – what [the] cases call the curtilage – as 'part of the home itself for Fourth Amendment purposes.'" Id. (quoting Oliver, 466 U.S. at 180, 104 S. Ct. 1735). In the instant case, there is no question that

Detective Grillo entered the curtilage of the MacFarlanes' home when he stepped onto their porch to knock on their door and when he walked toward the side of their house and approached their fence.  See id. at 1414-15 (explaining that area immediately surrounding and associated with a home is considered part of the home's curtilage, and that the front porch is a classic example of such an area).  Therefore, his investigation occurred in "a constitutionally protected area," and the only question for purposes of determining whether the plaintiffs' Fourth Amendment rights were violated is whether Detective Grillo accomplished that investigation "through an unlicensed physical intrusion."  Id. at 1415 (footnote omitted).  This court finds that he did not.

The Supreme Court has recognized that the police, like ordinary citizens, have an implicit license to approach a private home in order to speak with the occupants.  Thus, the Court has held that "[i]t is not a Fourth Amendment search to approach the home in order to speak with the occupant, *because all are invited to do that*."  Id. at 1416 n.4 (emphasis in original).  See also Kentucky v. King, --- U.S. ---, 131 S. Ct. 1849, 1862, 179 L. Ed. 2d 865 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do.").  Even when the purpose of such a so-called "'knock and talk' is to obtain evidence that will lead to the homeowner's arrest and prosecution, the license to approach still applies.  In other words, gathering

evidence – even damning evidence – is a lawful activity that falls within the scope of the license to approach." <u>Jardines</u>, 133 S. Ct. at 1423 (dissenting opinion). <u>See also</u> <u>id.</u> at 1416 n.4 ("The mere purpose of discovering information" while approaching a home and speaking with its occupants "does not … violate the Fourth Amendment" (internal quotations and citation omitted)). Consequently, Detective Grillo's conduct in walking up to the plaintiffs' front door and asking questions of Mr. MacFarlane did not constitute an unreasonable search for purposes of the Fourth Amendment.

The fact that Detective Grillo may have been motivated by a desire to assist the Bennetts in their dispute with the MacFarlanes does not render his actions unconstitutional. <u>See</u> <u>id.</u> at 1415-16 (describing implied license allowing police officers to approach a home and attempt to speak with the occupants). Nor are the MacFarlanes' generalized claims of harassment and intimidation by the police officers sufficient to support a Fourth Amendment violation under the circumstances alleged in their Complaint. <u>See</u> <u>King</u>, 131 S. Ct. at 1863 (finding that police officers' conduct "was entirely consistent with the Fourth Amendment" when they banged on occupant's front door as loud as they could and announced their presence). Moreover, this court finds that Detective Grillo did not exceed the scope of his license by walking to the side of the house and approaching the MacFarlane's fence. The complaint indicates that the fence was viewable from the

front of the MacFarlanes' house, and could be seen from the plaintiffs' front porch. (See Compl. ¶ 16; Compl. Ex. A at 2). "[W]hen officers walk up to the front door of a house they are permitted to see, hear, and smell whatever can be detected from a lawful vantage point." Jardines, 133 S. Ct. at 1423 (dissenting opinion). Accordingly, the MacFarlanes had no legitimate expectation that their fence "would remain unexamined by police, a visitor to the house, or a curious passerby." United States v. Rogers, No. CRIM. 03-10313-RGS, 2005 WL 478001, at *6 (D. Mass. Mar. 1, 2005). In any event, the plaintiffs' own allegations establish that Mr. MacFarlane continued to cooperate with Detective Grillo and answer his questions, even though he had no obligation to do so. See King, 131 S. Ct. at 1862 (explaining that occupant of home who chooses to open the door and speak with law enforcement officer "may refuse to answer questions at any time"). Therefore, the facts alleged by the plaintiffs are insufficient to support a claim for violation of their Fourth Amendment rights.[7]

## **Substantive Due Process**

Finally, the plaintiffs contend that the police defendants' alleged actions in investigating their possible violation of the pool fencing by-law as part of a concerted effort to intimidate and harass them are sufficient to state a claim for

---

[7]   Because neither Sergeant Allen nor Chief Cowan took any actions that could be considered a search, much less an unreasonable search, the plaintiffs cannot maintain a Fourth Amendment claim against those defendants pursuant to Section 1983 or the MCRA.

violation of their constitutional right to substantive due process. Again, this court

disagrees, and finds that the plaintiffs have failed to state a claim for relief under

Section 1983 and the MCRA.

In order to support a substantive due process cause of action under the

circumstances alleged here, the plaintiffs "must present a well-pleaded claim that a

state actor deprived [them] of a recognized life, liberty or property interest, and

that he did so through conscience-shocking behavior." Estate of Bennett v.

Wainwright, 548 F.3d 155, 162 (1st Cir. 2008). See also DePoutot v. Raffaelly,

424 F.3d 112, 118 (1st Cir. 2005) (explaining, in action against police officer, that

abuse of power by members of "the executive branch of state government sinks to

a level cognizable under the Due Process Clause only when it is so extreme and

egregious as to shock the contemporary conscience"). Although "the 'shock the

conscience' standard is imprecise," it is "readily apparent that negligent conduct,

simpliciter, is categorically insufficient to shock the conscience." DePoutot, 424

F.3d at 118-19. Rather, behavior "that sinks to the depths of shocking the

contemporary conscience is much more likely to find its roots in 'conduct intended

to injure in some way unjustifiable by any government interest.'" Id. at 119

(quoting County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S. Ct. 1708, 140

L. Ed. 2d 1043 (1998)).

This court finds that the MacFarlanes' allegations against the defendant police officers fall far short of what is required to make out a claim for deprivation of their right to substantive due process. As an initial matter, the plaintiffs have not alleged that Detective Grillo's investigation, or any conduct by the remaining officers, deprived them of life, liberty or property. They have not alleged that any arrests were made. Nor do they claim that they were fined or otherwise deprived of a property interest. Accordingly, this court concludes that the MacFarlanes have failed to state a due process claim on this basis alone. See Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) ("Where, as here, a plaintiff's substantive due process claims challenge the constitutionality of certain executive acts, 'the plaintiff must show *both* that the acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest in life, liberty, or property'" (quoting Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006)).

Even if they had alleged a deprivation of a constitutionally protected interest, this court finds that the plaintiffs have failed to set forth facts showing that the defendant police officers engaged in any conscience shocking behavior. "'There is no scientifically precise formula for determining whether executive action is – or is not – sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteenth Amendment.'" Id. (quoting Pagán, 448 F.3d at 32). Nevertheless, the case law establishes that such action

"must be truly outrageous, uncivilized, and intolerable, and the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error." Id. (internal quotations and citations omitted). Moreover, the "hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Id. (quoting González-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010)) (punctuation omitted).

No such circumstances have been alleged by the plaintiffs in this case.[8] The Complaint alleges that the police received a complaint regarding the MacFarlanes' alleged violation of a Town by-law, and that in an effort to appear unbiased, they decided to review all of the residential pool enclosures located in East Bridgewater. The Complaint further shows that Detective Grillo visited all the properties where suspected by-law violations were taking place, and spoke to each of the home-owners about the alleged violations. (See Compl. Exs. B, J & K). During his alleged visit to the MacFarlanes, Detective Grillo did nothing more than inform

---

[8] In reaching its conclusion that the plaintiffs have failed to allege any conscious shocking behavior on the part of the police officers, this court has considered all of the plaintiffs' allegations, including their allegation that Chief Cowan engaged in intimidating behavior by parking his car near their house and watching Mr. MacFarlane prepare his truck for work in the mornings.

Mr. MacFarlane of the reason for his visit, ask Mr. MacFarlane questions relating to his compliance with the pool fencing by-law, and inform him that the entire fencing structure needed to be five feet in height.  (See Compl. ¶¶ 14-16).  Even if the police defendants' efforts to include all pool owners in their investigation was intended to disguise their bias against the plaintiffs, the alleged facts do not even approach the type of behavior that the First Circuit has deemed insufficient to support a substantive due process claim.  See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 618-23 (1st Cir. 2000) (no due process violation found even though defendant police officers engaged in ongoing harassment and intimidation against plaintiffs, occupied plaintiffs' home without permission, and perjured themselves in an effort to support false charges against one of the plaintiffs).

The plaintiffs' characterization of the police officers' actions as intimidating, harassing, threatening, embarrassing and humiliating, does not warrant a different conclusion.  (See, e.g., Compl. ¶¶ 41-42).  Such conclusory allegations are insufficient to state a plausible claim for relief.  See Harron, 660 F.3d at 536 (finding that plaintiff's allegations that defendants' actions were "'wrongful' or 'discriminatory' or 'designed to put the [plaintiff] out of business'" were too conclusory to support a substantive due process claim).  While the plaintiffs may be able to show that the alleged harassment they suffered is enough to state an actionable claim against the Bennetts under one or more legal theories, their

allegations against the police officers are inadequate to state a claim for deprivation of their constitutional right to substantive due process.

Finally, the plaintiffs' reliance on Mass. Gen. Laws ch. 40A, § 7 is not sufficient to withstand the motion to dismiss. It is "bedrock law" in the First Circuit "that violations of state law – even where arbitrary, capricious, or undertaken in bad faith – do not, without more, give rise to a denial of substantive due process under the U.S. Constitution." Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992). Rather, in order to demonstrate conduct that "'shocks the conscience[,]'" a plaintiff must present "'stunning' evidence of 'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from bad faith' to 'something more egregious and more extreme.'" J.R. v. Gloria, 593 F.3d 73, 80 (1st Cir. 2010) (quoting DePoutot, 424 F.3d at 119). Because no such showing has been made here, the MacFarlanes' substantive due process claim against the officers must be dismissed.

## Reasonableness of the Defendants' Conduct

Even if it were assumed that one or more of the individual police officers had deprived the plaintiffs of their constitutional rights, this court would still find that the defendants are entitled to qualified immunity with respect to Counts I and IV of the Verified Complaint. By the time Detective Grillo visited the MacFarlane's house in October 2013, Supreme Court precedent had clearly

established that police officers are permitted to approach private homes in order to speak with the occupants, even if their only purpose is to discover information. See Jardines, 133 S. Ct. at 1416 n.4 ("What *King* establishes is that it is not a Fourth Amendment search to approach the home in order to speak with the occupant . . . [and] [t]he mere purpose of discovering information in the course of engaging in that permitted conduct does not cause it to violate the Fourth Amendment" (internal quotations and citation omitted)).  Accordingly, a reasonably competent officer in the defendants' position would not have had clear notice that Detective Grillo's conduct infringed upon the MacFarlanes' constitutional rights, and the defendants are entitled to dismissal on the grounds of qualified immunity.

### C.  Count II: Claim for Civil Rights Conspiracy Under Section 1985

The plaintiffs claim, in Count II of their complaint, that Chief Cowan, Detective Grillo and Sergeant Allen conspired with Mr. and Mrs. Bennett to deprive them of their civil rights in violation of 42 U.S.C. § 1985.  The plaintiffs have not raised any arguments in opposition to the East Bridgewater defendants' motion to dismiss this claim, and this court finds that it is not actionable under the facts alleged in this case.

42 U.S.C. § 1985 "confers a private right of action for injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the

laws, or of equal privileges and immunities under the laws . . . .'" Burns v. State

Police Ass'n of Mass. , 230 F.3d 8, 12 n.3 (1st Cir. 2000) (quoting 42 U.S.C.

§ 1985(3)). "To state a claim under § 1985(3), a plaintiff must, among other

requirements, allege the existence of a conspiracy intended to deprive an individual

or class of persons of protected rights based on some racial, or perhaps otherwise

class-based, invidiously discriminatory animus." Id. at 12 (quotations, citation and

footnote omitted). Here, however, the plaintiffs have not alleged any facts

showing that they are members of a particular class or that any of the defendants

acted with some racial or otherwise class-based animus. Therefore, they have

failed to state a claim for relief under 42 U.S.C. § 1985, and Count II must be

dismissed.

### D. Counts III and VI: Claims for Municipal Liability

The MacFarlanes have also asserted claims against the Town of East

Bridgewater for alleged violations of their civil rights. Specifically, in Count III

the MacFarlanes are seeking to hold the Town liable under Section 1983, and in

Count VI they are seeking to hold the Town liable under the MCRA. For the

reasons that follow, the East Bridgewater defendants' motion to dismiss these

claims is allowed.

## Municipal Liability Under Section 1983

In Count III, the MacFarlanes claim that Chief Cowan, Detective Grillo and Sergeant Allen were acting "pursuant to established policies, rules, regulations, ordinances, customs and usages of the Town" when they engaged in a pattern of conduct that deprived the MacFarlanes of their constitutional rights. (See Compl. ¶¶ 77-80). They further allege that the Town deprived them of their constitutional rights by failing

> (a) to supervise its police officers, including but not limited to, John Cowan, John R. Grillo and Scott Allen, (b) to conduct proper investigations, (c) to investigate properly incidents of unauthorized conduct, threats, coercion and intimidation, [and] (d) to train and/or educate its police officers adequately to respect privacy rights ….

(Id. ¶ 84). In other words, the plaintiffs are seeking to hold the Town liable for carrying out a policy or practice of sending police officers to investigate potential zoning violations, and for failing to train and supervise its officers in carrying out proper police investigations. (See Pl. Opp. Mem. at 8-9). However, their theories are inadequate to support a claim for municipal liability.

In order to establish liability against a municipality under Section 1983, the plaintiff must satisfy "two basic elements: first, that plaintiff's harm was caused by a constitutional violation, and second, that the [municipality was] responsible for that violation, and element which has its own components." Young v. City of Providence, 404 F.3d 4, 25-26 (1st Cir. 2005). The facts alleged in the instant case

fail to satisfy the first element. As described above, those facts fail to show that Detective Grillo or any of the other police defendants deprived the plaintiffs of their constitutional rights when they took steps to investigate and enforce the Town's pool fencing by-law. As a result, the plaintiffs' Section 1983 claim against the Town must fail as well. See Kennedy v. Town of Billerica, 617 F.3d 520, 531 (1st Cir. 2010) (emphasizing that municipal liability can only be imposed "for underlying, identifiable constitutional violations attributable to official municipal policy" and that "municipality's failure to train or supervise its police officers only becomes a basis for liability when action pursuant to official municipal policy of some nature *caused a constitutional tort*" (quotations and citation omitted)).

## Claim for Municipal Liability Under the MCRA

The MacFarlanes' claim against the Town under the MCRA fares no better. Under Massachusetts law, "a municipality is not a 'person' covered by the Massachusetts Civil Rights Act[.]" Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591-92, 747 N.E. 2d 729, 744 (2001). Accordingly, Count IV is not actionable and must be dismissed.

### E. Count V: Common Law Conspiracy to Violate the MCRA

In Count V of their Verified Complaint, the plaintiffs have brought a claim against Chief Cowan, Detective Grillo, Sergeant Allen and the Bennetts for "common law conspiracy to violate [the MRCA]." By this claim the MacFarlanes

allege that the police defendants and the Bennetts "did conspire for the purposes of obstructing justice and depriving the Plaintiffs of several state and federal constitutional rights by means of threats, intimidation and coercion, in violation of [the MCRA]." (Compl. ¶ 92). This court finds that the plaintiffs' failure to articulate a violation or attempted violation of their constitutional rights supports the East Bridgewater defendants' motion to dismiss this Count of the Verified Complaint.

In Massachusetts, courts recognize two different types of common law conspiracy. Aetna Cas. Surety Co. v. P&B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994) ("Under Massachusetts law, either of two possible causes of action may be called 'civil conspiracy'"). The first is a "coercive type" of civil conspiracy, which requires the plaintiff to establish "that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently.'" Id. (quoting Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D. Mass. 1985)). The "second type of civil conspiracy," which is at issue in this case, "is more akin to a theory of common law joint liability in tort[,]" and "is invoked to support liability of one person for a tort committed by another." Id. at 1564. "For liability to attach on this basis, there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Id. Accordingly, in order to state a claim against the police officers

on this basis, the plaintiffs must allege facts showing that the officers and the Bennetts had a common design or agreement to violate the plaintiffs' civil rights under the MCRA.

Assuming the officers' handling of Mrs. Bennett's complaint regarding the MacFarlane's alleged by-law violation may be viewed as an agreement between the officers and the Bennetts, the plaintiffs have not alleged that the officers' conduct in furtherance of that agreement deprived them of their rights under the MCRA. "To state a claim under the MCRA, a plaintiff must show that (1) his exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 247 (D. Mass. 2010). "Thus, in order 'to seek redress through [the MCRA as under its Federal analog, 42 U.S.C] § 1983 . . . a plaintiff must assert the violation of a federal [or State] *right*, not merely a violation of federal [or State] *law*." Id. (quoting Perkins v. Commonwealth, 52 Mass. App. Ct. 175, 181, 752 N.E. 2d 761 (2001)). For the reasons described above, the plaintiffs have failed to allege that the actions of the defendant police officers interfered with or attempted to interfere with any of their constitutional rights. Consequently, they have not alleged sufficient facts to support a claim that

the officers entered into an agreement or engaged in a common design to violate

their rights under the MCRA, and their claim for common law conspiracy must be

dismissed.

### E.     Count VII: Claim for Invasion of Privacy

The MacFarlanes' final claim against the East Bridgewater defendants,

which is set forth in Count VII of their Verified Complaint, alleges that the defen-

dants interfered with their right of privacy under Mass. Gen. Laws ch. 214, § 1B.

The East Bridgewater defendants have moved to dismiss this claim on the grounds

that the plaintiffs have failed to comply with the presentment requirement of Mass.

Gen. Laws ch. 258, § 4, and have otherwise failed to state a claim on the merits for

invasion of their statutory right to privacy.  (Def. Mem. at 19-20).  The plaintiffs

have presented no arguments in opposition to the defendants' motion to dismiss the

privacy claims against them.  This court finds that the motion should be allowed

with respect to Count VII.

### Claims Against the Town

The plaintiffs have asserted their privacy claim against all of the named

defendants, including the Town and its employees in both their official and

individual capacities.  The East Bridgewater defendants argue that the official

capacity claims,[9] as well as the claim against the Town, must be dismissed because the MacFarlanes failed to present those claims to the appropriate municipal official before initiating their lawsuit, as required under Section 4 of the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, § 4. (Def. Mem. at 19-20). The plaintiffs do not dispute the defendants' assertion that no such presentment was made to the Town. This court finds that their failure precludes these claims.

The MTCA, Mass. Gen. Laws ch. 258, "replaced the common-law scheme by which the Commonwealth and its municipalities enjoyed immunity from suit for tortious wrongdoing, subject only to miscellaneous exceptions." Daveiga v. Boston Pub. Health Comm'n, 449 Mass. 434, 436, 869 N.E.2d 586, 589 (2007). "The Act 'created a cause of action against public employers for the negligent or wrongful acts or omissions of their employees acting within the scope of their employment.'" Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 626, 976 N.E.2d 830, 835 (2012) (quoting Nelson v. Salem State College, 446 Mass. 525, 537, 845 N.E.2d 338 (2006)). However, it also "established requirements and limitations for those actions." Daveiga, 449 Mass. at 436, 869 N.E.2d at 589

---

[9] "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." McGuigan v. Conte, 629 F. Supp. 2d 76, 82 (D. Mass. 2009) (quoting Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)). Accordingly, the plaintiff's official capacity claims against Chief Cowan, Detective Grillo, Sergeant Allen and Building Commissioner Gardner is another way of asserting claims against the Town of East Bridgewater.

(footnote omitted).  One such requirement, known as the presentment requirement, provides in relevant part as follows:

> [a] civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail ….

Mass. Gen. Laws ch. 258, § 4.  It further provides that

> in the case of a city or town, presentment of a claim ... shall be deemed sufficient if presented to any of the following: mayor, city manager, town manager, corporation counsel, city solicitor, town counsel, city clerk, town clerk, chairman of the board of selectmen, or executive secretary of the board of selectmen ….

Id.  The plaintiffs do not dispute that they failed to present their privacy claims to any of the municipal officials listed in the statute.  Accordingly, those claims must be dismissed to the extent they have been asserted against the Town and the individual municipal defendants acting in their official capacities.  See Daveiga, 449 Mass. at 443, 869 N.E.2d at 594 (holding that dismissal was warranted where plaintiff failed to present claim for tort damages to appropriate official).

Even if the MacFarlanes had complied with the presentment requirement, their privacy claims against the Town and its employees acting in their official capacities would still not withstand scrutiny.  "The MTCA does not waive municipal immunity with respect to: 'any claim arising out of any intentional tort, including . . . invasion of privacy . . . .'"  Petricca v. City of Gardner, 194 F. Supp.

2d 1, 5 (D. Mass. 2002) (quoting Mass. Gen. Laws ch. 258, § 10(c) (1978)). For this reason as well, the challenged claims must be dismissed.

## Individual Capacity Claims

To the extent the plaintiffs allege that their privacy was invaded by the municipal employees while acting in their individual capacities, such claims too must be dismissed. The Massachusetts Privacy Act provides in full that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages." Mass. Gen. Laws ch. 214, § 1B. Notwithstanding the statute's use of the disjunctive term "or," courts interpreting the statute have determined that "[i]n order to be actionable, the interference must be unreasonable *and* either substantial or serious." Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 50 (D. Mass. 2000) (footnote omitted). See also Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517, 567 N.E. 2d 912, 914 (1991) (rejecting plaintiff's assertion that "the adjectives 'unreasonable,' 'substantial,' and 'serious' . . . set forth three alternative standards . . . because it would lead to illogical results and would be inconsistent with the purposes and policies of the statute."). This court finds that the East Bridgewater defendants' alleged actions do not satisfy this criteria.

As the Supreme Judicial Court has explained, the Privacy Act "was not intended to prohibit serious or substantial interferences which are reasonable or justified. For example, the statute would not apply to a search and seizure – clearly a serious and substantial interference with privacy – when it is performed pursuant to constitutional requirements and is otherwise reasonable." Schlesinger, 409 Mass. at 518, 567 N.E.2d at 914. Nor was it aimed at "preventing an interference which could be characterized as unreasonable, but which is only trivial or insubstantial." Id. (footnote omitted). Although the plaintiffs have alleged facts showing that they were subjected to years of harassing and intimidating behavior by the Bennetts, they have not shown that the named police officers' actions were unreasonable or violated their constitutional rights. As described above, the MacFarlanes have not alleged sufficient facts to show that Detective Grillo's investigation was in any way unreasonable or even amounted to a "search" for purposes of the Fourth Amendment. Moreover, common sense dictates that Building Commissioner Gardner caused no serious or substantial interference with the MacFarlanes' privacy when he sent them a letter notifying them of their alleged failure to comply with the Town's pool fencing by-law and directing them to take remedial action. Finally, the plaintiffs have not alleged that Sergeant Allen or Chief Cowan did anything in connection with the investigation and enforcement of the pool fencing by-law that could conceivably be considered an invasion of the

plaintiffs' privacy. Therefore, this court concludes that the plaintiffs have failed to state a claim against any of the moving parties for interference with their right to privacy under Mass. Gen. Laws ch. 214, § 1B.

### F.  Plaintiffs' Request to Amend Their Complaint

Although the plaintiffs argue that their Complaint is sufficient to state a claim against the East Bridgewater defendants, they have asked for an opportunity to amend in the event this court determines otherwise. (Pl. Opp. Mem at 5). Pursuant to the liberal amendment policy underlying Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be "freely given when justice so requires absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive." Transwitch Corp. v. Galazar Networks, Inc., 377 F. Supp. 2d 284, 290 (D. Mass. 2005) (quotations and citations omitted). In order to give the parties an opportunity to present arguments in favor of or against an amendment, the plaintiffs shall file a motion to amend along with a proposed form of amendment. Consistent with the present Scheduling Order, any such motion shall be filed by **July 17, 2015.** Any opposition shall be filed in accordance with the applicable rules.

## IV.  CONCLUSION

For all the reasons described herein, the "Motion to Dismiss on Behalf of Defendants the Town of East Bridgewater, John Cowan, John R. Grillo, Scott

Allen, and Edward Gardner" (Docket No. 8) is ALLOWED.  The plaintiffs may file any motion to amend their Complaint by **July 17, 2015**.  The parties are hereby notified that this matter will be remanded to the state court if the plaintiffs are unable to allege a cognizable federal claim.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge